We'll move now to case number three, Appeal 19-1125, David Gill v. Charles Scholz, and we'll begin, Mr. Hall, with you. David Gill v. Charles Scholz Good morning. May it please the Court, Oliver Hall for the plaintiff's appellants. This case presents a constitutional challenge to the ballot access requirements that Illinois imposes on independent candidates for the United States House of Representatives. The plaintiffs appeal from the judgment of the district court granting summary judgment to the defendants. We ask that this court reverse the district court and remand for further proceedings. Reversal is appropriate for three main reasons. And the first is that the district court improperly relied on this court's decision in Tripp v. Scholz as a litmus test to dispose of this case. The district court's discussion of the merits in this case was just four pages long and cited only one case, Tripp. Further, the district court expressly concluded that it was bound by Tripp and it resolved each and every issue in this case by adopting the findings of fact and conclusions of law from the Tripp court. It did not address almost any of the evidence that plaintiffs submitted in support of their claims. And it did not address the critical differences between this case and Tripp. As a result, the district court made no attempt to apply the mandatory analytic framework the Supreme Court has established for constitutional review of ballot access statutes. And that was set forth in the Anderson and Burdick cases. Specifically, the district court did not identify the character and magnitude of the burden imposed on the plaintiffs. The district court did not identify the precise interests the state is asserting to justify its requirements. It did not evaluate the legitimacy and strength of those interests. And nor did it make a determination as to the extent to which those interests make it necessary to impose the burdens on the plaintiffs' rights in this case. These are the mandatory steps the district court is required to take in applying the Anderson Burdick analysis and in reviewing constitutional challenges to ballot access requirements. It simply did not even purport to take these steps. Mr. Hall, can I ask you kind of what I think of as just a little bit of a legal framework question? You've got a lot of experience in this area. Maybe you can help me out a bit. I totally understand your argument about litmus tests. You're as clear as a bell on that. What role does precedent play in this area of law? So just suppose, for example, that hypothetically, I know, your argument's very clear. Suppose, for example, there's no factual error in TRIP. What would you tell us, as a framework matter, the role of precedent is or is not? If there were no factual error in TRIP, I think it would be much more persuasive authority in this case. As the defendants correctly note, the plaintiffs in this case are challenging the same provisions that were challenged in that case. There are still key differences. Notice, for example, that in TRIP, the plaintiffs were candidates for state house. Therefore, the 5% requirement that's challenged here and in that case only required them to obtain between 2,000 and 3,000 signatures, whereas the plaintiff, Gill, in this case, needed 10,750 signatures. So that's a key factual difference, and this is why the specific evidence presented in a case is so important. Would it matter for your facial challenge to the statute? What I hear are as-applied arguments that you have to look at the facts in this particular case, which are different than the facts in TRIP, but we're dealing with the same provision. So to piggyback on Judge Scudder's question, if there were no factual error in TRIP, and if TRIP were binding precedent with no factual error, can you survive your facial challenge? Your Honor, I think it's unlikely that we can. And honestly, in my view, ballot access statutes are typically challenged. I mean, if you're dealing with a requirement that's 10% or 30%, at that point, I think you can get into a facial argument. And I understand why the plaintiffs in this case made a facial argument. I mean, we are at the outer limits already under existing precedent. But this Court has recognized that a 5% requirement isn't really susceptible to a facial challenge. So I think that what we're really dealing with here on appeal is an as-applied challenge. And that's, again, why the evidence is so critical to this case. So are you appealing the facial challenge as well or just the as-applied, or both, given the factual discrepancy that you argue TRIP has? We did file an appeal from the entire judgment. Okay. Just so I'm clear. Thank you. But, again, this is why the evidence in these cases is so critical. Mr. Hall, is Mr. Gill running again in fall of 2020? I believe that he is intending to do so. I have not had strict confirmation from him that he's going to do so. But I can tell you that Mr. Gill has been very anxious to have this appeal decided because he told me that he wants to run again and that he wants other candidates to be able to run again. Other than your representation to the court as his counsel, do we have any mootness issue here, then? I understand you argue capable repetition yet evading review. However, we have a circumstance where we're talking about a past election, correct? That's right. But, as Your Honor is aware, election law cases are the quintessential example of the kind of case that is capable of repetition yet evading review. And that's exactly what happened here. In this case, the plaintiffs actually did obtain a preliminary injunction. Now, of course, that was stayed. There was an appeal pending. The appeal was dismissed as moot when the election concluded. But, here, we have not had any opportunity to litigate this case to a final judgment on the merits before the election concluded. And so, this is clearly well within the capable of repetition yet evading review exception to the mootness doctrine. Mr. Hall, when does a district court have to follow facts from a Seventh Circuit opinion? They certainly have to follow law, but factual determinations in the context of a particular case, are those ever binding or are those always binding? I don't think that the district court has authority to say that the factual findings made by another court or by this court on review, although I don't think this court typically engages in fact finding. I don't think a district court typically has authority to say that those facts are incorrect. However, that's really not the issue that we're dealing with in this case. In this case, those facts are not part of the record of this case. Those facts really are not even part of the record in TRIP, because they're not true. I take the implication of your question to be, does the court have to accept that candidates have complied with the 5% requirement, even though they have not actually complied with it? And, at some point, common sense has to cut in here. No, a court does not have to accept what is demonstrably false. And that's because those facts are not in the record of this case. The court is required to address the evidence in the record of this case, and it manifestly failed to do that. And that's why the court's error in relying on TRIP is so important here. If we take a look at some of the key evidence in this case, by any objective standard, it is sufficient to establish a severe burden. So, first of all, as I mentioned, the 5% requirement is toward the outer limit of any requirement that the Supreme Court has ever upheld. So we're at the upper limit on its face. That may not be sufficient to sustain a facial challenge, but it certainly establishes the parameters within which we are working. Second, no candidate for the United States House of Representatives in Illinois has ever overcome a signature requirement of 10,754. That's the requirement that Plaintiff Gill was required to meet under the 5% requirement. Do we know if any have tried, or does that matter? Has anybody other than Mr. Gill tried to meet that 10,754 and failed? I'm not sure that it's clear from the record of this case whether there have been failed attempts. Certainly, if we have that evidence, it's relevant. Of course, it's relevant. It shows diligent candidates attempting but coming up short, and that goes to past experience, and that is one of the key tests for the constitutionality of a statute. But it's not necessary. In store of E. Brown, when the Supreme Court established the past experience test, it simply said the ultimate inquiry is whether reasonably diligent candidates have complied with some regularity. It's going to be one matter if they have, and quite another matter if they have not. We are in the latter situation. No candidate has complied with this requirement in more than 40 years. Now, remember, this is 15 years more than the 25-year period of exclusion that this court relied on as really one of the key facts in invalidating the challenge requirements in Lee v. Keith. So in that case, it was a period of 25 years exclusion. In this case, we have a period of 40-plus years exclusion. By the way, when we say overcome a requirement of 10,000 signatures or more, of course what we're referring to is the fact that a candidate submitted nomination petitions with that many signatures and survived when the nomination petitions were challenged. In Illinois, under Illinois law, you can submit a nomination petition with one or even zero signatures, and if there's no challenge filed, you're on the ballot. At least that was the way it was up until 2018. Now they check to make sure you facially at least have 10% of the required signatures. But that's an important point. With that 10,750 figures, the numerator, what's the denominator here? Half a million, 600,000, 800,000? I'm not aware, Your Honor, but it's 5% of the denominator. Very good. Moving on. So the last candidate that did comply with this requirement was H. Douglas Lassiter in 1974. He did that when he had no time limit. In other words, the 90-day time limit that now applies to Plaintiff Gill and other independent candidates was not in effect at that time. Compared nationwide, this statute is one of the most severe in the nation. Only three other states in the entire country require candidates for the United States House of Representatives to get more than 10,000 signatures. Only three other states. And then this is perhaps the most damning fact of all. Since 1890, in the 25,000-plus races for the United States House of Representatives, only three candidates in all of American history have ever obtained more than 10,754 signatures. Two of those candidates had no time limit whatsoever, and one candidate had more than twice the amount of time that Plaintiff Gill had in this case. So, again, if we are looking at any objective standard that courts apply in measuring the severity of a burden, this is a severe burden. It's severe on its face, or at least it's approaching severity on its face, being at 5%. It's severe compared to other state requirements. It's at the very top of the requirements imposed. And it's severe based on the past history, which is perhaps the most important test under Storer v. Brown. So what we have here is a severe burden by any measure that courts have previously recognized, and yet the district court in this case said not a severe burden. Now, what did it rely on in making that determination? It relied on a finding of fact from Tripp v. Scholes that candidates have complied with this 5% requirement across multiple elections and in multiple districts. That is demonstrably false. In Tripp, the candidates cited who supposedly complied with the 5% requirement did not comply with the 5% requirement. They complied with the lower flat signature fee that applies in years following redistricting. So that is just an error from Tripp that, you know, in relying on that fact, the district court just compounded the error that it committed when it applied Tripp as a litmus test. And then finally, the district court also erred by violating Rule 56C. The supposed fact that the court relied on from Tripp is nowhere in the record of this case. On the contrary, the evidence in this case shows that no candidate has complied with this requirement in more than 40 years. So when the district court relied on a supposed fact that candidates routinely comply with this requirement, it was relying on a fact that is outside the record of this case that is a clear violation of Rule 56C. And the fact that this case is here on appeal and that fact, whether candidates have complied or not, remains in dispute, demonstrates why it was error for the district court to grant summary judgment to the defendants. If there are no more questions, I'll reserve my time. Thank you. Mr. Beauchat. May it please the court, my name is Frank Beauchat and I represent the State Board of Elections. This court upheld the constitutionality of identical signature and petitioning requirements just over two years ago in Tripp. This court should once again affirm summary judgment in favor of the board because plaintiffs have not identified any material differences between this case in Tripp that warrant a contrary result here. Do you agree that the factual finding in Tripp that candidates have complied with the 5% requirement is incorrect? I agree that the elections that the court relied on in Tripp were not elections where they faced the 5% requirement. Those were post-census elections where you had a flat signature requirement for the reasons that this court has explained in Stevo. But then in our response brief, we have identified a number of instances where candidates have been on the ballot. In their reply brief, plaintiffs argue that none of those should be taken into account because they didn't face any objections. After checking with the board, it's my understanding that one of them, Cynthia Dempsey, did survive an objection in 2010. And again, there is some uncertainty about the record in coming up with new election data here in the appellate briefing. And that's in part because plaintiffs did not raise this as a basis for departing from Tripp in the district court. But my understanding was it was not raised in the briefing, that this is an issue that the district court relied on without the briefing. So how could they have had the opportunity to raise it? Well, they knew that we were relying on Tripp in our summary judgment motion, and so therefore... For factual reasons. I'm sorry, legal purposes. As precedent. As precedent, yes. Yes, and to get to the relationship between a litmus test and precedent, which was explored earlier, plaintiffs are confusing the difference or overlooking the difference between properly following precedent and improperly applying a litmus test. When courts use the litmus test terminology, it's to remind courts that you can't look at a single factor from other cases and rely on that to uphold the constitutionality of a particular election rule. So, for example, a finding, if it's been held that a 5% signature requirement in another state like Delaware does not impose a severe burden, that in and of itself doesn't establish that there's no severe burden here. You have to look at the entirety of the circumstances and the law at issue. But that doesn't mean that courts decide these issues and make these determinations in a legal vacuum and without taking into account precedent. In Tripp, for example, this court began its analysis by looking at precedent to determine what the legal framework is. Where are we starting from? And the court noticed that the 5% signature requirement here was well within what has been upheld in other cases and did the same analysis with the notarization. Isn't that as to the facial aspect of the statute as opposed to the as applied? Yes. When that first part of Tripp was analyzing the 5% signature requirement on its own. It then later analyzed the 5% signature requirement in conjunction with the notarization requirement and the 90-day petitioning window. But contrary to what opposing counsel said, the court pointed out in Tripp that the 5% signature requirement here was not the outer limit because the 5% requirement here is 5% of voters at the last election, not 5% of registered voters, which is what the requirement was in Genes. So the court noted that we actually aren't at the outer limits of what the Constitution permits here. And then it's within that context that the court in Tripp then went on to determine, to weigh the other factors, to see if there was anything special about this case that required a finding of a severe burden when other similar requirements have determined to not have imposed a severe burden. I'd like you to respond to a point that Mr. Hall has made, and that is that there's really only, when you look at the district court opinion, the only way to read it is that the district court reasoned entirely in terms of Tripp for purposes of siding with your position. I mean, is that not a fair and accurate reading of what the district court did? I think that's not entirely fair, Your Honor. What it did is it used Tripp as the starting point. It said, you know, just very recently, the Seventh Circuit has upheld this very signature requirement against this very legal challenge. It then went through and noted that plaintiffs were trying to distinguish this case from Tripp in some cases, or in some regards. The court noted that here the plaintiffs had submitted evidence about Gil's personal efforts in individually attempting to obtain signatures, but found that that was not. But, I mean, there's multiple pages where the court's discussing our opinion in Tripp in a lot of detail. Yes. And then the court ends in its conclusion by saying, based upon the Seventh Circuit's decision in Tripp, comma, you know, et cetera, et cetera. And when you go look at our opinion in Tripp that, you know, you know as well or better than I do, on page 865, we point to those two election results, and we characterize them as powerful evidence. Correct, Your Honor. Right. And so given where you started in response to Judge St. Eve's question, it surprises me a little bit that you're not saying, well, let's just remand this and figure it out. Well, there's two responses, Your Honor. First, I do defend the district court's reasoning of using Tripp as a starting point and then seeing if there was any basis for departing from that decision. But that's the problem. The district court used it as a starting point and an ending point. The seeing if there's any difference didn't analyze the facts that were in the 56.1 statements. So how can you say that the district court made the determination that the Supreme Court has said you must do here of the character and magnitude of the asserted injury of this particular plaintiff when there was no analysis or acknowledgement of any of the facts that were particular to this plaintiff, including, as you said before, the efforts that Mr. Gill alone made. Significantly here, the lack of population density in this district hampered the petition signature efforts. I believe that was undisputed. Tripp dealt with a different district. This is dealing with the 13th district. One of the facts that Mr. Gill put forth as pertaining to his burden and the magnitude of the injury was the lack of population density. That was not addressed at all. Well, a couple points, Your Honor. First is that even if this court finds that the manner in which the district court explained its reasoning is lacking, that's not alone a basis for reversal. Only if this court can affirm on any basis in the record. So as long as the district court reached the correct conclusion, even if it didn't do the greatest job of explaining its reasoning, that's not a basis for reversal. I thought you might make that point. The difficulty that I have with that is that this is such a fact-intensive balancing of interest standard that the U.S. Supreme Court has set out for us an Anderson verdict. And that's where I just have a bit of unease undertaking that balancing myself. Well, there's really three asserted differences that plaintiffs assert between this case and Tripp. And this court can address all three of them. The first and the one that was talked about most in the opening argument and probably the briefing is the ballot history. And no doubt ballot history is a relevant consideration, but it's not an outcome determinative factor. For example, in Lee, which is a case that plaintiffs rely on very heavily, that was not the only basis for finding that that particular signature requirement was invalid. In fact, that was just one of three. The court first pointed out that the timing requirements were far more severe than any other requirement in the country. And then the court also said that the 10% signature requirement was a good deal more severe than any requirement in the country. Here, while the Illinois requirements are on the more stringent end of the spectrum, they are not an outlier. They are not well beyond what any other state is doing, as was the case in Lee. And again, as this court noted in Tripp, it's actually the 5% requirement is well within what has been upheld in other circumstances. So the ballot history does not, while it's something to consider, it doesn't by itself establish that there's a severe burden here. And in particular, when defendants or the board presented evidence below that, while maybe this very specific signature requirement hadn't been met, other candidates had been able to get comparable signature numbers in other cases. And by focusing the inquiry so specifically on whether or not somebody has gotten over 10,000 signatures in a congressional race in Illinois in a 90-day window, plaintiffs are over-narrowing, I guess, the analysis here when the court can take a broader look at what other candidates have accomplished. So all of those points make sense, and they're well articulated. They're just not embodied in what we're reviewing. Well, they are embodied certainly in Tripp. I don't know. The district court opinion. Well, that's true, Your Honor. But the district court opinion, again, as long as the district court's conclusion that there is no basis for departing from Tripp is correct, then even if the court could have done a better job in articulating these reasons below, then this court should affirm. That would be true as a matter of law, but the concern we have is with the factual development. Yes, that's true. I agree, Your Honor. But the court took the correct approach under Tripp. But how about for a summary judgment with a detailed factual record where the court didn't address really many, if any, of the facts in the party's submission and just took a fact from Tripp that you have agreed was not accurate? How can we affirm on that record? Well, the court, I would push back a bit on the notion that the court ignored the evidence that was before it. The court did discuss the evidence of Gill's personal efforts, but his personal efforts. But where did the court conduct an analysis of the character and magnitude of the asserted injury based on the facts, excuse me, that were submitted in the summary judgment motion? Well, on page 18, the court discusses the evidence of Gill's individual efforts. It doesn't use the exact terms that Your Honor just brought up. But that's what the Supreme Court has said the courts have to conduct, that particular analysis of the character and magnitude of the asserted injury. That's not just something coming out of nowhere. Well, right. But the court did that here. I mean, one point that's important in remembering is that evidence of personal diligence on account of Gill does not necessarily establish that there was reasonable, that he was reasonably diligent and enjoyed a modicum of public support. Did the court make that finding? Well, the court made the finding that the average number of signatures that circulators needed to find. But did the court make the finding that the efforts put forth by Gill essentially aren't relevant here? Well, not that they're not relevant, but also that's a legal issue. Did the court consider the argument that the lack of population density in the district hampered him from obtaining the significant number of signatures? Isn't that directly relevant to his burden? Well, the lack of population density was an issue that was raised in SHRP as well. But it's a different district. Right, and I believe it's less rural than the districts in SHRP, if I remember correctly. There are full decaders. Well, first of all, I don't know that that's in the record or how could we make that determination. You may ultimately be right and you may ultimately prevail, but I don't see that in the record. I guess, again, Your Honor, even if the reasoning was not perfect by the district court. I think the problem was we are not seeing reasoning based on the facts submitted here. The reasoning seems to start and end with TRIP. And on a summary judgment with specific facts, that's problematic. I agree that that may be problematic, but what TRIP established was a baseline, a sort of starting point. Just like in TRIP, this court used a genus as a baseline and a starting point and then asked is there anything special about this case that would mean that we aren't going to find and follow existing precedent that's directly on point. Here, there was no evidence of something special. Plaintiffs rely on the evidence of Gil's individual attempts to collect signatures. But how do we know it wasn't special, as you put it, without some type of analysis? Because the sort of special requirement, at least a lot of these, are really legal issues. For example, whether the focus of reasonable diligence should be on what this one individual did or whether you look at a broader array of, for example, in TRIP, the court. I agree that there are legal issues. I don't disagree there. But how can you say the character and magnitude of the injury asserted by Mr. Gil, the burden on him, is a legal issue? Well, the burden is based on facts. Exactly. The legal burden is based on facts. And the question is whether there are any material facts that require anything different. And that's what the court didn't decide. Well, the court did review the evidence. It did make a decision that the individual efforts were not enough to establish by themselves a severe burden. The ballot history has never been held as an outcome determinative matter. That wouldn't self-impose sort of a litmus test. There was evidence about the notarization requirement being different in numerical terms, but as a proportional matter, the burden was still the same as it was in TRIP. And this court, the district court correctly relied on TRIP as a starting point. This court should affirm summary judgment, or we ask that this court affirm summary judgment, because plaintiffs have not identified any material differences between this case and TRIP, and therefore there's no reason to reach a different result here. Thank you, Mr. Biaschek. Mr. Paul, you did use your rebuttal time, but we'll give you a minute to sum up. Thank you, Your Honor. I'd like to begin just by asking if there are any questions that I can answer. If not, I would just say I think as the court has made clear with its questions, TRIP was the start, middle, and end point of the district court's analysis. There was no other case cited, almost no evidence addressed, and the court expressly concluded that it was bound by TRIP's findings and legal conclusions. Opposing counsel suggests that we can still affirm on any ground the court sees fit here. He says that the district court still reached the right result. The problem here, we don't know what the right result is until we've looked at all the evidence and applied it under the strict requirements of the Anderson verdict analysis. None of that was done in this case, and for that reason, summary judgment is improper. Reversal is appropriate, and we ask for a remand to the district court for further proceedings. Thank you, Mr. Hall. Thank you, Mr. Biaschek. The case will be taken under advisement.